## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

DARIUS HILLYER,                         )
                                        )
                    Plaintiff,          )
                                        )
vs.                                     )          Case No. 08-cv-420-TLW
                                        )
MICHAEL J. ASTRUE,                      )
Commissioner of the Social Security     )
Administration,                         )
                                        )
                    Defendant.          )

## ORDER AND OPINION

Plaintiff Darius Hillyer, pursuant to 42 U.S.C. § 1383(c), requests judicial review of the decision of the Commissioner of the Social Security Administration denying plaintiff's application for supplemental security benefits ("SSI") under Title XVI of the Social Security Act ("Act"). In accordance with 28 U.S.C. § 636(c)(1) and (3), the parties have consented to proceed before the undersigned United States Magistrate Judge. (Dkt. # 13). Any appeal of this order will be directly to the Tenth Circuit Court of Appeals.

## Plaintiff's Background

Plaintiff was born March 9, 1957 and was 50 years old at the time of the Administrative Law Judge's ("ALJ") final decision on February 28, 2008.[1] (R. 28, 86, 88). Plaintiff has a high school diploma and states he completed three years of college. (R. 126). Plaintiff's prior work

---

[1] Plaintiff's application for SSI was denied initially and upon reconsideration. (R. 50-53, 55-57). A hearing before ALJ Charles Headrick was held January 24, 2008, in Tulsa, Oklahoma. (R. 23-45). By decision dated February 28, 2008, the ALJ found that plaintiff was not disabled at any time through the date of the decision. (R. 9-20). On June 5, 2008, the Appeals Council denied review of the ALJ's findings. (R. 2-4). Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. § 404.981.

consists of a tree service business he owned.  He told the ALJ at the hearing he stopped this prior work due to back pain and depression.  (R. 30).

Plaintiff protectively filed an application for SSI on May 12, 2006, originally claiming a disability onset date of May 12, 1993.  At the hearing, plaintiff amended his onset date to May 24, 2006.  (R. 26).  In his initial Disability Report-Adult, dated May 24, 2006, plaintiff alleges "severe depression, hepatitis C, degenerative arthritis, pain in [his] body, HBP (high blood pressure), back problems ([from a] motor cycle accident in 1994 in which [his] spine was injured), paralyzed fingers on [his] right hand, [] amputated fingers on [his] left hand, [and] 1/5 of [his] body burned" as the conditions that limit his ability to work.  (R. 120).

In his first Disability Report-Appeal, dated by the index as October 4, 2006,[2] plaintiff claims his condition has worsened.  He claims to be unable to sleep, and when awake, he professes to see "dark clouds and creatures.  [He] see[s] some light."  Plaintiff says he "does not believe either," and also claims to hear voices telling him he is going to hell.  (R. 141).  Plaintiff complains he has back pain and that his back hurts when he sits or stands.  He claims to be in severe pain all the time.  Id.  Plaintiff also recounts being burned and receiving skin grafts.  Id.

In his next Disability Report-Appeal,[3] plaintiff claims "severe depression, hallucinations, [and] degenerative arthritis" as new physical and mental limitations.  Plaintiff claims he has extreme depression and auditory hallucinations (hearing voices) and that these are new conditions since his last report.  He claims the onset date of these mental conditions to have been in 1996.  (R. 92).

---

[2]  The Court notes this document is not signed or dated on its face.
[3]  The Court cannot determine the exact date of this form either.  The index dates it March 20, 2006, however, a statement on its face saying "Date of Last Disability Report:  10/03/2006," leads the Court to believe March 20, 2006 to be a typographical error.

In a third Disability Report-Appeal, dated March 26, 2007 on its face, plaintiff states he went to a chiropractor, had x-rays, and was diagnosed with severe scoliosis, degenerative arthritis, and dislocated disks.  Plaintiff claims to have lost five (5) inches in height due to these problems.  Plaintiff claims to be in "great pain" despite taking pain medication.  He claims to have "great difficulty concentrating."  Plaintiff states he is not alert, cannot drive, and he "feels out of it."  Plaintiff also claims to have three paralyzed fingers on his right hand and five amputated fingertips of his left hand, and he states that this makes it difficult for him to write, hold things, or "do anything with [his] hands that would make him dependent upon them."  (R. 147).  He cannot sit or stand long due to pain.  He claims to be bi-polar and severely depressed. Plaintiff claims laying down is also very uncomfortable.  He claims he is taking medications that "just do not seem to work well."  He feels "out of it."  Id.

A summary of plaintiff's medical records shows plaintiff visited the emergency rooms of St. John's, St. Francis and Hillcrest Hospitals, over the span of a year in 2005 for problems ranging from an abscessed insect bite to alleged drug overdoses with additional injuries, causing him to be admitted to the hospital at different times, sometimes to the psychiatric unit.  Plaintiff also sought the care of Morton Comprehensive Health Services, Dr. James Campbell, and the Romero Health Center in an effort to alleviate his symptoms of chronic low back pain, generalized mid and upper back pain, leg and hip pain, neck pain and loss of grip strength.

Plaintiff sought help from Associated Centers for Therapy ("ACT") in an attempt to gain control over his depression and anxiety and to find help for situational issues such as problems paying hospital bills and basic living expenses.  According to detailed Treatment Plans in the record, plaintiff was seen by two doctors at ACT, Dr. Joyce Bumgardner, and Dr. Dawn LaFromboise, over the course of four (4) years, beginning in February, 2004, and continuing

through November, 2007.  Plaintiff complained during his time at ACT of auditory and visual hallucinations, severe depression, anxiety, problems with concentration, memory, judgment and coping.  (R. 292, 295, 328, 387).  His GAF scores ranged from 48 on his admission Treatment Plan on February 25, 2004, to 50 on August 10, 2006, to 46 on April 9, 2007, to 48 again on October 4, 2007 on his last Treatment Plan in the record (R. 296, 332, 388) (noting an expected discharge date in October, 2008 if plaintiff were able to remain symptom free for six months on medications, if he were financially stable, and able to care for his own medical and medication needs independently).  (R. 391).

In assessing plaintiff's qualifications for SSI, the ALJ determined at step one of the five step sequential process that plaintiff had not been engaged in substantial gainful activity since May 12, 2006, the date of the application.  (R. 14).  At step two, the ALJ found plaintiff to have the severe impairments of degenerative joint disease of the lumbar spine with low back pain, depression and anxiety.  Id.  The ALJ then discussed a hospitalization of plaintiff after he was found, on June 25, 2005, unresponsive on the floor of his truck with burns to his leg and buttocks.  Plaintiff was discharged on July 6, 2005, and the ALJ noted plaintiff's Axis V GAF score at the time of discharge to have been 65.  Id.  See also Exhibit 1F, (R. 157-175).  The ALJ discussed plaintiff's subsequent hospitalization, also in 2005, for a skin graft to treat the burn he received as a result of this incident.  Id.  See also Exhibit 2F, (R. 176-193).

The ALJ also touched on plaintiff's treatment at ACT, although the ALJ only mentioned Dr. Bumgardner and her letter dated February 27, 2006, in which she stated her opinion that plaintiff was unable to work at the time and would continue to require agency assistance in order for him to meet his basic daily needs for the subsequent six months.  (R. 15).

The ALJ described a consultative examination performed by Dr. Sri K. Reddy, M.D., on July 13, 2006.  At the time of the examination, plaintiff's chief complaint was lower back pain. The ALJ noted Dr. Reddy found plaintiff's grip strength to be 20 kg with his right hand and 50 kg with his left hand.  Dr. Reddy stated plaintiff's reflexes were equal at his knees and absent at his ankles.  Sensory examination was decreased to light touch in both feet.  Dr. Reddy noted tenderness over the lumbosacral paraspinals.  The ALJ noted Dr. Reddy's assessment that plaintiff had low back pain, bronchial asthma, hepatitis C and that he suffered from depression. (R. 15).  See also Exhibit 7F (R. 312-318).

The ALJ discussed a consultative psychological examination performed by Dr. Stephanie C. Crall, Ph.D., who noted plaintiff to have been alert, oriented, and cooperative during the examination, but extremely agitated.  Plaintiff indicated to Dr. Crall that he had been depressed the majority of his life.  He said he had not used alcohol in several months and had not used heroin in approximately a year.  Dr. Crall assessed plaintiff with schizoaffective disorder, depressive type; alcohol dependence, early full remission; and opioid dependence, sustained full remission on Axis I and gave no diagnosis on Axis II.  Dr. Crall stated that in her opinion plaintiff was not capable of managing his own funds.  (R. 15, 319-322).

At step three, the ALJ determined plaintiff's impairments did not meet the requirements of any Listing, giving specific emphasis to Listing 1.04, disorders of the spine and stating that Listing 1.04 requires evidence of nerve root compression, arachnoiditis, or lumbar stenosis, none of which he found.  The ALJ also considered plaintiff's mental impairments, singly and in combination, and determined they did not meet or medically equal the criteria of listings 12.04 or 12.06, including both "paragraph B" and "paragraph C" criteria.  (R. 15).

The ALJ found plaintiff had the residual functional capacity ("RFC") to perform a range of medium work as follows:

> claimant has the residual functional capacity to lift and/or carry 50 pounds occasionally and 25 pounds frequently; stand and/or walk up to 6 hours in an 8-hour day with normal breaks; and sit up to 6 hours in an 8-hour day with normal breaks; with marked limitation in the ability to understand and remember detailed instructions; carry out detailed instructions; and interact appropriately with the general public.

(R. 16).

At step four, the ALJ determined that plaintiff had no past relevant work, and transferability of job skills was therefore not an issue. See 20 C.F.R. § 416.968. At step five, the ALJ considered plaintiff's age, education, work experience, and RFC and found there are jobs that exist in significant numbers in the national economy that plaintiff could perform. See 20 C.F.R. §§ 416.960(c) and 416.966. (R. 19). The ALJ discussed the testimony given by the vocational expert that jobs existed in the national economy for an individual with the plaintiff's age, work experience, education, and RFC such as hand packager and laundry worker, both described as medium, unskilled work; laundry sorter and mailroom clerk, both described as light, unskilled work; clerical mailer and sorter, both described as sedentary, unskilled work. (R. 19). The ALJ concluded that plaintiff was not disabled under the Act from May 12, 2006, through the date of the decision. (R. 20).

## Issues Raised

On appeal, plaintiff alleges three errors. First, plaintiff argues that the ALJ's RFC assessment is not supported by substantial evidence. (Dkt. # 16 at 5). Second, plaintiff alleges the ALJ failed to consider medical opinions from his treating physician. Id. Finally, plaintiff argues the ALJ failed to properly consider his credibility. Id.

## Review

When applying for disability benefits, a plaintiff bears the initial burden of proving that he or she is disabled.  42 U.S.C. § 423(d)(5); 20 C.F.R. § 404.1512(a).  "Disabled" under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment."   42 U.S.C. § 423(d)(1)(A).  A plaintiff is disabled under the Act only if his or her "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy." 42 U.S.C. § 423(d)(2)(A).  Social Security regulations implement a five-step sequential process to evaluate a disability claim.  20 C.F.R. § 404.1520; Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988) (setting forth the five steps in detail).  "If a determination can be made at any of the steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary."  Williams, 844 F.2d at 750.

The role of the court in reviewing a decision of the Commissioner under 42 U.S.C. § 405(g) is limited to determining whether the decision is supported by substantial evidence and whether the decision contains a sufficient basis to determine that the Commissioner has applied the correct legal standards.   Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005).  Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Id.  The Court's review is based on the record, and the Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  Id.  The Court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner.  See Hackett v. Barnhart, 395

F.3d 1168, 1172 (10th Cir. 2005).  Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands.  White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2002).

Plaintiff first argues the ALJ's RFC assessment is not supported by substantial evidence, specifically that the ALJ's RFC assessment must accurately reflect the claimant's limitations. (Dkt. # 16 at 6).  The Court agrees.

Plaintiff's initial application for SSI listed "severe depression, hepatitis C, degenerative arthritis, pain in [his] body, HBP (high blood pressure), back problems ([from a] motor cycle accident in 1994 in which [his] spine was injured), paralyzed fingers on [his] right hand, [] amputated fingers on [his] left hand, [and] 1/5 of [his] body burned" as the conditions that limit his ability to work.  Emphasis added.  (R. 120).

The Court understands that the ALJ stated that he considered all of plaintiff's symptoms, and the extent to which those symptoms "can reasonably be accepted as consistent with the objective medical evidence and other evidence," based on the requirements of 20 C.F.R. § 416.929, however, the ALJ did not address the issue of claimant's hand impairments in his formation of plaintiff's RFC, nor did he include any language regarding reaching and/or handling in plaintiff's RFC.  (R. 16-18).

Plaintiff correctly argues that the ALJ's RFC assessment must accurately reflect his limitations (Winfrey v. Chater, 92 F.3d 1017, 1024 (10th Cir. 1996)), and "address both the remaining exertional and non exertional capacities of the individual."  SSR 96-8p.  Winfrey discusses the three phases of step four of the five step sequential evaluation process.  The first phase requires an evaluation of the claimant's RFC.  Id. at 1023.  The second phase entails an examination of the demands of the claimant's past relevant work.  Id.  In the third phase, "the

8

ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one."  Id.  At each phase, the ALJ must make specific findings.  Id., Henrie v. Unites States Dep't of Health & Human Servs., 13 F.3d 359, 361 (10th Cir. 1993).

Plaintiff complained that the injuries to his hands, specifically, amputation of the second, third and fourth fingertips of his left hand, and partial paralyzation of his dominant right hand, significantly limited his ability to work in combination with his other impairments.  Plaintiff stated it was difficult for him to write, hold things, or "do anything with [his] hands that would make him dependent upon them."  (R. 147.)  On September 17, 2005, plaintiff was seen by Dr. Cyrus Motazedi, DO, of St. Francis Hospital.  Dr. Motazedi noted plaintiff's finger amputations on his left hand, and also noted plaintiff's hand to be deformed in a contracted position.  He also noted the right upper extremity "does have contracture of the hand and wrist."  (R. 208).

Plaintiff was sent to Dr. Sri K. Reddy, M.D. on July 13, 2006 for a consultative examination for the Disability Determination Division of the Social Security Administration.  Dr. Reddy noted plaintiff's past hand surgeries (R. 313), and noted his grip strength was 20 kg with his right hand and 50 kg with his left hand.  Dr. Reddy stated plaintiff had "functional range of motion at the shoulder, elbow, wrist and fingers" for both his right and left upper extremities. (R. 314).

Plaintiff consulted Dr. James Campbell for pain management, mainly for his lower back. Dr. Campbell also noted the injuries to plaintiff's hands, stating on March 1, 2007 he observed plaintiff's left hand finger amputations and "right hand 3rd and 4th fingers [were] unable to bend."  (R. 377).

This evidence was not discussed or mentioned by the ALJ in his RFC assessment for plaintiff.  This omission requires the Court to remand with instruction to the ALJ to incorporate his evaluation of this medical evidence into his decision.  The ALJ is required to "evaluate every medical opinion" he receives, 20 C.F.R. § 404.1527(d), and when rendering his decision, the ALJ is required to consider the totality of the circumstances and articulate his considerations for the record.  See Winfrey v. Chater, 92 F.3d 1017, 1020-21 (10th Cir. 1996).  Although the ALJ's conclusions may be supported by substantial evidence, without benefit of the ALJ's findings in these areas, the Court cannot make this determination.  "[W]here the record on appeal is unclear as to whether the ALJ applied the appropriate standard by considering all the evidence before him, the proper remedy is reversal and remand."  Baker v. Bowen, 886 F.2d 289, 291 (10th Cir. 1989).

Plaintiff next asserts the ALJ failed to properly consider medical opinions from his treating physician, Dr. Joyce Bumgardner, M.D., at ACT, specifically, that the ALJ failed to discuss plaintiff's GAF scores.  The Court disagrees.  The ALJ discussed Dr. Bumgardner's letters, their dispositive nature and determined he could not give them weight as they were "administrative findings dispositive of the case" instead of an actual medical opinion.  The ALJ otherwise accepted Dr. Bumgardner's diagnosis of depression and anxiety, and listed both as severe impairments.  (R. 14, 18).  In reviewing the record, the Court finds there is substantial evidence to support the ALJ's determination.

Plaintiff's final allegation of error is that the ALJ failed to properly consider the plaintiff's credibility.  It is possible that the ALJ's disregard of certain medical evidence (as set forth above) affected the ALJ's evaluation of plaintiff's credibility regarding his subjective complaints, see Winfrey, 92 F.3d at 1021.  Because the record contains medical evidence that

must be re-examined by the ALJ, the ALJ's credibility findings should also be reevaluated upon remand.

## Conclusion

Because the ALJ did not properly evaluate all of the medical evidence in the record, the Court cannot say that his decision is supported by substantial evidence.  Accordingly, this case is REVERSED and REMANDED for reconsideration.  In doing so, the Court does not dictate the result.  Rather, remand is ordered to assure that a proper analysis is performed and the correct legal standards are invoked in reaching a decision based on the facts of the case.  Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995).

SO ORDERED this 1st day of February, 2010.


T. Lane Wilson
United States Magistrate Judge

11